UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HILTON HUDSON, | ) |
| | ) |
| Plaintiff, | ) 17 C 5426 |
| | ) |
| vs. | ) Judge Gary Feinerman |
| | ) |
| NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, METRA POLICEMAN VASKO, UNKNOWN METRA POLICE, and JOHN AND MARY DOES 1-3, | ) ) ) ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

In this suit against Northeast Illinois Regional Commuter Railroad Corporation ("Metra"), Metra police officer Vasko, and several unnamed Metra officers, Hilton Hudson alleges that Vasko assaulted and then wrongfully searched and detained him. Doc. 9. Vasko has not yet appeared. Metra moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss several counts of the complaint for failure to state a claim. Doc. 24. The motion is granted in part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Hudson's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013)

1

(internal quotation marks omitted). The facts are set forth as favorably to Hudson as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Around 9:15 p.m. on August 15, 2015, after working on a cleaning crew at the Chicago Air and Water Show, Hudson, who is African-American, arrived at a Metra station in downtown Chicago to catch a train to Joliet. Doc. 9 at ¶¶ 9, 21, 22, 29. At a special checkpoint put in place for the Air and Water Show, a Metra police officer named Vasko detained Hudson and told him that he could not get on the train because he was "a bum and a drunk." *Id*. at ¶¶ 25-28. When Hudson protested that he was not drunk and had just gotten off work, Vasko screamed at him to leave the station. *Id*. at ¶¶ 29-32.

Hudson attempted to call his fiancée, but Vasko grabbed his forearm and took the phone away from him. *Id*. at ¶¶ 34-35. Vasko then told Hudson to put his hands on his head and proceeded to forcibly move his arms upwards. *Id*. at ¶ 38. Vasko searched Hudson, patting him down and turning his pockets inside out, and then handcuffed him and told him that he was under arrest. *Id*. at ¶¶ 39-42. Vasko detained Hudson in a room at the train station, and Hudson heard Vasko tell others that he would let Hudson go after the last train left for Joliet. *Id*. at ¶¶ 44-45. After two and half hours, Hudson was released. *Id*. at ¶ 47.

Hudson filed this suit against Metra, Vasko, and several unidentified Metra police officers on July 24, 2017, alleging violations of 42 U.S.C. § 1983 and Illinois law. Doc. 1. The complaint has eight counts. Metra moves to dismiss the claims against it in Count V (conspiracy to interfere with civil rights), Count VI (intentional infliction of emotional distress), Count VII (failure to prevent conspiracy), and Count VIII (*Monell* failure to train).

**Discussion**

I.      **Count VIII: *Monell* Failure to Train**

Hudson alleges that Metra failed to adequately train its officers to prevent the constitutional violations he suffered. Doc. 9 at ¶¶ 89-93. "[A] municipality may be directly liable [under *Monell v. Department of Social Services*, 436 U.S. 658 (1978),] for constitutional violations by its officers when the municipality evinces a deliberate indifference to the rights of the plaintiff by failing to train adequately its officers to prevent the violation." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). To give rise to this kind of liability, the failure to train "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action … necessary to trigger municipal liability." *Id.* at 62 (citations and internal quotation marks omitted). In addition to alleging facts that, if true, would show that the municipality was deliberately indifferent, the plaintiff must also allege facts sufficient to show causation, meaning that the failure to train was the "moving force behind the injury alleged." *Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 404 (1997) (internal quotation marks omitted); *see also Connick*, 563 U.S. at 59 n.5 (noting that deliberate indifference and causation are separate elements of a failure-to-train claim).

To support the deliberate indifference element of his claim, Hudson points to an assessment of the Metra police force commissioned by Metra and issued in August 2013 by the security consulting firm Hillard Heintze. Doc. 34 at p. 4. The report concluded that the Metra

police force was "in crisis" and "in need of major transformation," *ibid*., and recommend that officers receive additional training on the use of force, arrests, searches, and discrimination and profiling, *id*. at 2. According to Hudson, Metra ignored the training recommendations. *Id*. at 2.

The report's conclusion that the Metra police needed additional training on the use of force, arrests, searches, and discrimination, together with Hudson's allegation that Metra did not conduct any such training, are sufficient to "raise [Hudson's] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This is not a case where the plaintiff has "add[ed] *Monell* boilerplate allegations" in an effort to "proceed to discovery in the hope of turning up some evidence to support the 'claims' made." *Strauss v. City of Chicago,* 760 F.2d 765, 768 (7th Cir. 1985). Instead, pointing to the Hillard Heintze report, Hudson has directly alleged that Metra was aware in 2013 that its police force had systematic problems with, among other things, the use of force, arrests, searches, and discrimination and profiling, and that additional training was needed to rectify them; and he further alleges that Metra ignored those problems. Those allegations, if true, could demonstrate deliberate indifference, for if the documented problems were severe enough, then Metra's alleged decision not to conduct any new training would constitute "continued adherence to an approach that [Metra] kn[e]w or should [have] know[n] ha[d] failed to prevent tortious conduct by employees." *Connick*, 563 U.S. at 62.

Hudson's allegations are also sufficient to plausibly demonstrate causation. It is true, as Metra observes, that Hudson does not explicitly allege that Metra's failure to adequately train its officers caused his injuries. Doc. 24 at 9. But the Civil Rules "requir[e] plaintiffs to plead *claims* rather than facts corresponding to the elements of a legal theory." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). "It is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent

4

with the complaint." *Ibid*. Based on the facts alleged in Hudson's complaint and response brief, it is plausible that Metra's failure to act on the Hillard Heintze report's training recommendations was the "moving force" behind Hudson's injuries—that is, that Vasko would not have violated Hudson's rights had he been properly trained on the use of force, searches, arrests, and discrimination. *See City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (observing that the ultimate question for causation is whether "the injury would have been avoided had the employee been trained under a program that was not deficient in the identified respect").

Hudson has put forward sufficient factual allegations to state a plausible failure-to-train claim. Metra's motion to dismiss Count VIII is therefore denied.

## II. Counts V and VII: Conspiracy to Interfere With Civil Rights and Failure to Prevent Conspiracy

Hudson accuses Metra of conspiring to deprive him of equal protection on the basis of his race, in violation of 42 U.S.C. § 1985(3), Doc. 9 at ¶¶ 75-78, and of failing to prevent such a conspiracy, in violation of 42 U.S.C. § 1986, *id.* at ¶¶ 83-88. Hudson's only allegation supporting that conspiracy is that, in addition to Vasko's mistreatment of him in August 2015, Metra police used unreasonable force against him and falsely charged him with trespassing in a separate incident in 2010. *Id.* at ¶¶ 11-13. But the 2010 and 2015 incidents do not add up to a plausible indication that Metra or anyone associated with Metra conspired to violate Hudson's civil rights, particularly given that he otherwise had been riding Metra without incident since 1981. *Id.* at ¶ 10; *see Henderson v. Marker*, 581 F. App'x 577, 580 (7th Cir. 2014) (affirming the dismissal of a § 1985(3) claim because, although the plaintiff accused the defendants "of acting because of his race," his complaint "c[a]me nowhere close to plausibly alleging discriminatory animus").

5

Hudson also alleges that Metra police are engaged in a widespread pattern of discriminatory harassment of black passengers. Doc. 9 at ¶¶ 15-16. That allegation is conclusory and thus is disregarded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Henderson*, 581 F. App'x at 580 ("Simply reciting legal terms will not suffice to state a federal claim … ."). The fact that the Hillard Heintze report observed a need for training on discrimination and profiling does not plausibly suggest that the Metra police are involved in a conspiracy inspired by racial animus.

In sum, Hudson has not made allegations that "nudg[e]" his claim that there is a conspiracy against him or black Metra passengers more generally "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Counts V and VII therefore are dismissed, though the dismissal is without prejudice to Hudson repleading them in an amended complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (noting that "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed").

## III. Count VI: Intentional Infliction of Emotional Distress

Hudson also brings an intentional infliction of emotional distress claim under Illinois law. Doc. 9 at ¶¶ 79-82. That claim is governed by Illinois's statute of limitations. *See Guaranty Trust v. York*, 326 U.S. 99, 110 (1945) (holding that statutes of limitations are substantive under the *Erie* doctrine). Although Illinois generally applies a two-year statute of limitations to personal injury claims, *see* 735 ILCS 5/13-202, a personal injury suit against Metra or any other

governmental entity must be brought within one year, *see Copes v. Ne. Ill. Regional Commuter R.R. Corp.*, 45 N.E.3d 1123, 1129-30 (Ill. App. 2015); 70 ILCS 3615/5.03; 745 ILCS 10/8-101.

Hudson brought this suit on July 24, 2017, nearly two years after the alleged August 2015 incident with Vasko. It necessarily follows that his intentional infliction of emotional distress claim is untimely. (Hudson does not seek tolling, and so has forfeited any tolling argument. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss.").) And because the claim's untimeliness cannot be cured by repleading, the dismissal is with prejudice. *See Conover v. Lein*, 87 F.3d 905, 908 (7th Cir. 1996) (noting that an untimely claim should be dismissed with prejudice).

## Conclusion

Metra's motion to dismiss is granted in part and denied in part. Counts V and VII of the complaint are dismissed without prejudice. If Hudson wishes to replead those claims, he must file an amended complaint by May 3, 2018. Count VI is dismissed with prejudice.

April 12, 2018

_____
United States District Judge