UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HILTON HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 5426 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, UNKNOWN METRA POLICE, and JOHN AND MARY DOES 1-3, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this *pro se* suit against Northeast Illinois Regional Commuter Railroad Corporation ("Metra") and unnamed Metra police officers, Hilton Hudson alleges that he was arrested, searched, and detained in violation of 42 U.S.C. §§ 1983, 1985, and 1986 and Illinois law. Doc. 9. Earlier in the litigation, the court dismissed Hudson's §§ 1985 and 1986 claims and state law intentional infliction of emotional distress claim. Docs. 52-53 (reported at 2018 WL 1762439 (N.D. Ill. Apr. 12, 2018)). The court also dismissed for want of prosecution Hudson's claims against a security officer named Vasko. Doc. 114. Now before the court is Metra's motion for summary judgment on the remaining claims. Doc. 90. The motion is granted.

**Background**

Consistent with Local Rule 56.1(a)(3), Metra filed a statement of undisputed facts along with its summary judgment motion. Doc. 92. Local Rule 56.1(b)(3)(B) required Hudson to respond to Metra's Local Rule 56.1(a)(3) statement. *See* N.D. Ill. L.R. 56.1(b)(3)(B) (requiring a "concise response to the movant's statement that shall contain … a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific

1

references to the affidavits, parts of the record, and other supporting materials relied upon"). Despite having been served with a Local Rule 56.2 Notice, Doc. 93, which explained in detail the requirements of Local Rule 56.1, Hudson did not file a Local Rule 56.1(b)(3)(B) response.

Hudson's failure to file a Local Rule 56.1(b)(3)(B) response has consequences. The local rules provide that "[a]ll material facts set forth in the [Local Rule 56.1(a)(3)] statement … will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3)(C). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (collecting cases); *see also Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (same); *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Hudson's *pro se* status does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Zoretic*, 832 F.3d at 641 ("While we liberally construe the pleadings of individuals who proceed pro se, neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes.") (internal quotation marks omitted); *Brown v. Wyndemere LLC*, 608 F. App'x 424, 425 (7th Cir. 2015) ("[A] district court is entitled to enforce its local rules, even against pro se litigants.").

Here, the problem is not that Hudson failed to strictly comply with Local Rule 56.1(b)(3)(B), but that he did not comply at all. Accordingly, the court accepts as true the facts

set forth in Metra's Local Rule 56.1(a)(3) statement "to the extent th[ose] facts [a]re supported by admissible and docketed evidence." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) (internal quotation marks omitted) ("According to well-established Seventh Circuit law, [the nonmovant's] noncompliance [with Local Rule 56.1(b)(3)(B)] meant that the district court could exercise its discretion to accept [the movant's] statements of fact as undisputed."); *see also Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [movant's] factual submissions as unopposed, because the [nonmovant] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation.") (collecting cases); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by [Local Rule 56.1(b)(3)(B)], those facts are deemed admitted for purposes of the motion.") (internal quotation marks omitted); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012) (similar).

Hudson did file a document titled "Opposition to Motion for Summary Judgment," Doc. 98, which the court deems to be a Local Rule 56.1(b)(2) memorandum of law, and a document titled "Statements," Doc. 99, which the court deems to be a Local Rule 56.1(b)(3)(C) statement of additional facts. The court disregards the paragraphs of the Local Rule 56.1(b)(3)(C) statement that Hudson does not support with specific citations to record evidence. *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710-11 (7th Cir. 2015) ("[T]he district court did not abuse its discretion in disregarding the facts contained in [the non-movant's] statement of additional facts that were not supported by proper citations to the record."); *Bryant v. Bd. of Educ., Dist. 228*, 347 F. App'x 250, 253 (7th Cir. 2009) ("The district court was entitled

3

to disregard those assertions in [the non-movant's] proposed statement of facts that violated Local Rule 56.1 by not being properly supported … ."). Hudson supports ¶¶ 2, 3, and 6 of his Local Rule 56.1(b)(3)(C) statement with citations to record evidence, but he cannot use the factual assertions in those paragraphs to contradict any factual assertions in Metra's Local Rule 56.1(a)(3) statement.

As noted, Local Rule 56.1(b)(3)(B) required Hudson to file "a response to each numbered paragraph in [Metra's Local Rule 56.1(a)(3)] statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). Hudson's submission of a Local Rule 56.1(b)(3)(C) statement does not and cannot properly controvert "each numbered paragraph" of Metra's Local Rule 56.1(a)(3) statement because it does not sync up with the factual assertions in Metra's statement. This court need not and will not attempt to map the factual assertions in Hudson's Local Rule 56.1(b)(3)(C) statements onto the factual assertions in Metra's Local Rule 56.1(a)(3) statement to determine whether Hudson has adduced a genuine dispute of material fact as to any of Metra's assertions; that is the purpose of a properly composed Local Rule 56.1(b)(3)(B) response. *See Curtis*, 807 F.3d at 219 ("The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact. A litigant who denies a material fact is required to provide the admissible evidence that supports his denial in a clear, concise, and obvious fashion, for quick reference of the court. The district court did not abuse its discretion in finding Curtis failed to comply with requirements."); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("Because of the important function

local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."). Accordingly, the court accepts as true the properly supported facts asserted in Metra's Local Rule 56.1(a)(3) statement. *See Curtis*, 807 F.3d at 218 ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010) ("accept[ing] defendants' statement of material facts as true" where the plaintiffs "did not bother to respond to [defendants'] statement of material facts"); *Olivet Baptist Church*, 2016 WL 772787, at *1-2 (N.D. Ill. Feb. 29, 2016) (similar), *aff'd*, 672 F. App'x 607 (7th Cir. 2017).

That said, the court is mindful that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not … automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884 (citations and internal quotation marks omitted). The court accordingly recites the facts as favorably to Hudson as the record and Local Rule 56.1 permit, and then will determine whether Metra is entitled to judgment on those facts. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

On the evening of August 15, 2015, Hudson attempted to board a Metra train departing from the LaSalle Street Station. Doc. 92 at ¶ 8. Metra prohibited alcoholic beverages and glass containers that day due to the Chicago Air and Water Show. *Id*. at ¶¶ 9-10. The policy was enforced by the Metra Police Department together with security officers provided by Security

5

Personnel, Inc. ("SPI"), *id*. at ¶¶ 11-12, who are afforded the jurisdictional and law enforcement powers of state police officers, *id*. at ¶ 13. Both Sergeant Babusch of the Metra Police Department and SPI Officer Vasko were working at the LaSalle Street Station that evening to enforce Metra's alcohol restrictions. *Id*. at ¶¶ 16-17.

When Hudson attempted to board a train, he possessed four cans of beer that he refused to discard. *Id*. at ¶¶ 19-20. Having overheard a loud exchange between Vasko and Hudson, *id*. at ¶ 21, Babusch approached the two and learned of Hudson's refusal to discard his beer, *id*. at ¶ 22. Babusch, who was trained to detect intoxication, concluded that Hudson was intoxicated based on his odor of alcohol, bloodshot eyes, and unsteady gait. *Id*. at ¶¶ 24-25.

Vasko arrested Hudson after he refused to leave the train station despite being ordered to do so. *Id*. at ¶ 28. Vasko searched Hudson's person and, accompanied by Babusch, escorted him to a temporary holding area. *Id*. at ¶¶ 29-32. Hudson was issued a citation for violating 610 ILCS 90/1 (Railroad Intoxicating Liquor Act), *id*. at ¶ 33, and was released at 12:45 a.m. on August 16, several hours after he was arrested, *id*. at ¶ 24. Hudson was the only person arrested at the LaSalle Street Station that evening. Doc. 99 at p. 1, ¶ 2.

At least as of August 2013, Metra was aware of "deficiencies" related to its "mission, leadership, policies and procedures, staffing, investigations and internal affairs." *Id*. at p. 1, ¶¶ 3, 6. According to a comprehensive outside assessment, the Metra Police Department as of 2013 was "a program in crisis." *Id*. at p. 3.

## Discussion

Before proceeding, the court addresses Hudson's claims against unnamed Metra officers and the John and Mary Does. "Discovery was [Hudson's] opportunity to identify th[ose] defendant[s], and he failed to do so before discovery closed." *Williams v. Rodriguez*, 509 F.3d

392, 402 (7th Cir. 2007). Accordingly, his claims against those defendants are dismissed. *See ibid.* (holding that the district court should have dismissed *sua sponte* the plaintiff's claims against an unnamed police officer after close of discovery due to the plaintiff's "failure to identify this defendant and the lack of any record that this individual was served with process").

Hudson's surviving claims against Metra allege violations of § 1983 and state law assault, battery, and false arrest. For his § 1983 claim, Hudson contends that Metra is liable under the *Monell* doctrine. Doc. 9 at ¶¶ 17-18; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, a municipality is not liable for its employees' constitutional violations based on a *respondeat superior* theory. *See Monell*, 436 U.S. at 691. To hold a municipality liable under § 1983, the plaintiff must show that "a government's policy or custom" is responsible for the constitutional injury, *id*. at 694, and "that [the] official policy or custom not only caused the constitutional violation, but was the moving force behind it," *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (internal quotation marks omitted). "An official policy or custom may be established by means of [1] an express policy, [2] a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or [3] through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012); *see also Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011).

Hudson packages his *Monell* claim as a failure-to-train claim. Doc. 9 at ¶ 92. "[A] municipality may be directly liable [under *Monell*] for constitutional violations by its officers when the municipality evinces a deliberate indifference to the rights of the plaintiff by failing to train adequately its officers to prevent the violation." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th

Cir. 2007). To give rise to liability, the failure to train "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action … necessary to trigger municipal liability." *Id*. at 62 (citations and internal quotation marks omitted). In addition to showing that the municipality was deliberately indifferent in that respect, the plaintiff must also prove causation, meaning that the failure to train was the "moving force behind the injury alleged." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (internal quotation marks omitted); *see also Connick*, 563 U.S. at 59 n.5 (noting that deliberate indifference and causation are separate elements of a failure-to-train claim).

Based on the summary judgment record, no reasonable jury could find Metra liable on a failure-to-train theory. To prevail on that theory, Hudson must show either that the training deficiency "[was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the deficiency exhibit[ed] deliberate indifference," or that "a repeated pattern of constitutional violations ma[de] the need for further training … plainly obvious." *Jenkins*, 487 F.3d at 492 (internal quotation marks and citation omitted); *see also J.K.J. v. Polk Cnty.*, 928 F.3d 576, 598-99 (7th Cir. 2019) (explaining that *Monell* liability for a "single incident" under a failure-to-train theory exists only where the constitutional harm is a "highly predictable" consequence of the failure to train).

8

Hudson fails to make either showing. The record reveals only one instance of an allegedly unconstitutional arrest, search, and seizure, not "a repeated pattern." *Jenkins*, 487 F.3d at 492. And the record does not support the proposition that Metra's police training was so deficient that its inadequacy was likely to result in a constitutional violation. The only potentially relevant evidence is a 2013 letter suggesting that Metra, with the aim of improving its police department, had commissioned a study identifying deficiencies in the department. Doc. 99 at 3. But the age of the letter (approximately two years before Hudson's arrest) and its lack of specificity prevents it from creating a genuine factual dispute as to whether Metra was deliberately indifferent to its officers' wrongdoing in conducting arrests and searches, let alone that such indifference was the "moving force" behind Hudson's assertedly unconstitutional arrest, search, and detention in August 2015. *See Garcia v. City of Chicago*, 2018 WL 3546742, at *3 (N.D. Ill. July 24, 2018) (holding that a Department of Justice report "generally address[ing]" police department deficiencies is insufficient, standing alone, to establish *Monell* liability) (collecting cases).

Even if Hudson's complaint could be read to allege *Monell* liability on a theory other than failure-to-train, no reasonable jury could find such liability. Although the record shows that Metra had a policy of stationing officers at checkpoints the day of the Air and Water Show, there is no evidence of any Metra policy concerning the nature of searches conducted at checkpoints or about a widespread practice of improper searches or seizures. Nor does any evidence suggest that any officer with whom Hudson interacted possessed final policymaking authority for Metra. And one isolated incident of (alleged) officer misconduct, without more, cannot establish *Monell* liability. *See Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or

9

practice, it is clear that a single incident—or even three incidents—do not suffice."); *Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000) ("Ordinarily, one incident is not sufficient to establish a custom that can give rise to *Monell* liability."); *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993) ("[A] single isolated incident of wrongdoing by a non-policymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct.").

Accordingly, summary judgment is granted as to Hudson's *Monell* claim. Hudson's remaining claims against Metra—false arrest, assault, and battery—arise under Illinois law. Hudson and Metra are both Illinois citizens, so only supplemental jurisdiction, 28 U.S.C. § 1367(a), lies over those claims. And because the court has rejected all of Hudson's federal claims, the court in its discretion may decline to exercise supplemental jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction."). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pend[e]nt state claims." *Williams*, 509 F.3d at 404. That general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Ibid.*; *see also RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012).

Hudson's state law claims are subject to the first and third exceptions because they are clearly barred by the statute of limitations. *See Guaranty Trust v. York*, 326 U.S. 99, 110 (1945) (holding that statutes of limitations are substantive under the *Erie* doctrine). Although Illinois

10

generally applies a two-year statute of limitations to personal injury claims, *see* 735 ILCS 5/13-202, a personal injury suit against a government entity like Metra must be brought within one year, *see Copes v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 45 N.E.3d 1123, 1129-30 (Ill. App. 2015) (citing 70 ILCS 3615/5.03 and 70 ILCS 3615/2.20(a)(x)). Hudson's state law claims are governed by that statute of limitations. *See Holliman v. Cook Cnty.*, 2016 WL 4678312, at *2 (N.D. Ill. Sept. 6, 2016) (applying the one-year statute of limitations to state law assault and battery claims against a municipal entity); *Delgadillo v. Paulnitsky*, 2007 WL 1655252, at *5 (N.D. Ill. June 1, 2007) (same for a state law false arrest claim). Hudson brought this suit on July 24, 2017, nearly two years after the August 2015 arrest, search, and detention. And Hudson does not seek tolling, thus forfeiting any tolling argument. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss."). It follows that his state law claims are untimely, warranting summary judgment. 2018 WL 1762439, at *3-4 (dismissing Hudson's intentional infliction of emotional distress claim as untimely).

## Conclusion

Metra's summary judgment motion is granted. Hudson's claims against the unnamed defendants are dismissed. With all claims resolved, judgment will be entered in favor of Defendants and against Hudson.

September 9, 2019

_____
United States District Judge

11